UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIDA FABAIN,

                Plaintiff,

        -against-

WESTCHESTER COUNTY,

                Defendant.

**OPINION & ORDER**

24-CV-06482 (PMH)

PHILIP M. HALPERN, United States District Judge:

Elida Fabian ("Plaintiff")[1] brings this action against Westchester County ("Defendant"), her former employer, pressing claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq.* ("NYSHRL"), for race and national origin discrimination and retaliation. (Doc. 6, "Am. Compl." at 7-11).[2]

Before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed on March 6, 2025. (Doc. 17; Doc. 18, "Cosgriff Decl."; Doc. 19, "Def. Br."). Plaintiff filed her opposition (Doc. 21, "Pl. Br."), and the motion was fully briefed with the filing of Defendant's reply (Doc. 20, "Reply").

For the reasons set forth below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff, a Hispanic woman from the Dominican Republic, alleges in the Amended Complaint that she worked for Defendant through the Department of Social Services ("DSS") from July 9, 2002 until March 10, 2022, when she was terminated. (Am. Compl. ¶¶ 2, 8-10). DSS, a

---

[1] The Court notes that Plaintiff's surname is misspelled in the caption of the Amended Complaint.

[2] Citations to specific pages of the Amended Complaint and other filings on the docket correspond to the pagination generated by ECF.

department of Westchester County, "provides social services to the county's residents in need of assistance in child support services, food, housing, medical services, [and] protective and preventive services for vulnerable children and adults." (*Id.* ¶ 3). Plaintiff, as part of her job duties, was responsible for "evaluating the social services needs of children and their families." (*Id.* ¶ 11).

Plaintiff, in January 2020, was assigned a new supervisor, Chanel Daniels. (*Id.* ¶ 12). Plaintiff alleges that, from her "first interaction with Daniels," Daniels made "offensive and derogatory remarks directed at [Plaintiff's] ethnicity" and criticisms of Plaintiff's work product, "often laced with . . . ethnic slurs." (*Id.* ¶¶ 14-15). Plaintiff reported Daniels to Vincent Agnano, a case manager for DSS, after a "racist diatribe" by Daniels during an office conference on January 31, 2020. (*Id.* ¶ 16). Agnano did nothing to address Plaintiff's concerns. (*Id.*). Patricia Williams, the Director of Child Welfare for DSS, allegedly reprimanded Daniels and Agnano in a June 8, 2020 meeting "for their lack of support and guidance" for Plaintiff. (*Id.* ¶¶ 13, 17-18). Daniels' animus toward Plaintiff did not improve after this meeting. (*Id.* ¶ 19). Plaintiff, for several months after this meeting, made numerous requests to Agnano that he reassign Plaintiff from working with Daniels. (*Id.* ¶ 21). Plaintiff's requests were all denied. (*Id.* ¶ 21). Plaintiff's transfer request was directed to Jill Seeling, the Director of DSS, on January 10, 2021. (*Id.* ¶ 26). Seeling likewise denied Plaintiff's request. (*Id.*).

Plaintiff alleges further mistreatment and discriminatory remarks by Daniels over the course of Plaintiff's employment. (*See id.* ¶¶ 22-25, 27-28). Plaintiff alleges that, from June 23, 2020 through December 6, 2020, Daniels used client complaints, which are commonplace for social services workers, to falsely accuse Plaintiff of "some form of coercion with D[S]S' clients." (*Id.* ¶ 22). Daniels, on December 6, 2020, purportedly "fabricated an accusation where she charged [Plaintiff] with fraud against DSS without any evidence." (*Id.* ¶ 27). Then, on December 18, 2020,

Daniels "concocted a scheme . . . where the client would be excused from citation (an accessory charge of a violation of a DSS rule) if the client filed a complaint against" Plaintiff. (*Id.* ¶ 28). The client allegedly informed Plaintiff of "Daniels' scheme," but Daniels still "credited the client's story without any unbiased investigation." (*Id.*). Daniels also allegedly required Plaintiff to work in-person two days per week during the COVID-19 pandemic, despite all other employees only being required to work in-person one day per week. (*Id.* ¶ 24). After Plaintiff complained, she was allowed to work in-person one day per week. (*Id.*). Plaintiff further alleges that Daniels called her a "dumb, illiterate, and dumb Latina" in July, August, and October of 2020. (*Id.* ¶ 25).

Plaintiff, on February 4, 2021, submitted an internal complaint based on racial and ethnic discrimination to the DSS Equal Employment Opportunity Office. (*Id.* ¶ 29). Plaintiff received no response to her complaint. (*Id.*). Plaintiff, on August 30, 2021, was subject to a thirty-day disciplinary suspension. (*Id.* ¶ 30). Plaintiff was ultimately terminated from her position with Defendant on March 10, 2022 due to "false accusations of misconduct." (*Id.*).

## STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

3

has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.    Documents Considered on a Motion to Dismiss

In deciding a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Defendant asks the Court to consider four documents in deciding the instant motion: (1) the Report and Recommendation issued by the Hearing Officer in Plaintiff's hearing pursuant to Section 75 of the New York State Civil Service Law; (2) Plaintiff's complaint filed with the New York State Division of Human Rights ("NYSDHR Complaint"); (3) Plaintiff's Notice of Claim; and (4) a memo, dated February 4, 2021, purportedly written by Plaintiff. (Def. Br. at 11; Cosgriff Decl. Exs. B-D, F).

The Court, in deciding the instant motion, considers Plaintiff's NYSDHR Complaint and Notice of Claim as these documents are prerequisites to Plaintiff filing her Title VII and NYSHRL claims and, thus, integral to the Amended Complaint. *See Benson v. Westchester Med. Ctr.*, No. 20-CV-05076, 2022 WL 2702544, at *7 (S.D.N.Y. July 12, 2022) ("[F]iling the Notice of Claim was a precondition to filing tort claims against Defendants—that document is, therefore, integral to the Second Amended Complaint."); *Doroz v. Deiorio's Foods, Inc.*, 437 F. Supp. 3d 140, 146 (N.D.N.Y. 2020) (noting that a NYSDHR complaint is "incorporated by reference" and "integral to the Complaint"). The Court need not and does not consider the Section 75 Hearing Officer's Report and Recommendation or the February 4, 2021 memo because, even without considering these documents, Plaintiff fails to state a claim under Title VII for either discrimination or retaliation, and Plaintiff failed to satisfy the notice of claim requirements necessary to bring her NYSHRL claims. *See Antler v. Lloyd's*, No. 11-CV-01915, 2012 WL 13442458, at *3 (S.D.N.Y. Mar. 27, 2012) (declining to consider extraneous documents submitted in connection with a motion to dismiss where the complaint failed to state a claim).[3]

## **ANALYSIS**

### I.    Timeliness of Title VII Claims

Defendant argues that all discriminatory acts that occurred before December 18, 2020 are untimely as, in New York, "the statute of limitations for filing a claim with the EEOC is 300 days" and Plaintiff filed her NYSDHR Complaint on October 14, 2021. (Def. Br. at 14). Plaintiff does not dispute that discriminatory acts outside of this 300-day period are time barred but instead

---

[3] Even had the Court considered the Section 75 Hearing Officer's Report and Recommendation, it is premature to determine its preclusive effect. *See Balchan v. New Rochelle City Sch. Dist.*, No. 23-CV-06202, 2024 WL 4333417, at *4 (S.D.N.Y. Sept. 27, 2024) ("[W]hether the Hearing Officer's findings constitute factual findings that must be granted preclusive effect requires a more comprehensive analysis that is better suited to the motion for summary judgment stage.").

argues that acts that occurred before December 18, 2020 may be used as "background evidence" to bolster her timely alleged acts. (Pl. Br. at 19). Defendant agrees that acts prior to December 18, 2020 may be used as background evidence. (Reply at 8).

Federal claims of employment discrimination are generally subject to a 300-day statute of limitations. *See Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (citing 29 U.S.C. § 626(d)(1)(B)). That is, a plaintiff must file an action with the appropriate state administrative agency within 300 days of "the alleged unlawful practice" and acts that "occurred prior to the 300-day period" are not actionable. *Id.* (quoting *AMTRAK v. Morgan*, 536 U.S. 101, 113-14 (2002)). However, acts which occurred outside the limitations period may still be used "as background evidence in support of a timely claim." *Id.* (quoting *Morgan*, 536 U.S. at 113). "[R]elevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act." *Id.* (alteration in original) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005)). Accordingly, any discriminatory acts alleged to have occurred prior to December 18, 2020 are time barred, but the Court considers them as background evidence in deciding whether Plaintiff plausibly pleads her Title VII claims.

II.    Title VII Race and National Origin Discrimination

Defendant argues that Plaintiff fails to allege that it "took any adverse employment action on the basis of her race or national origin" and, thus, Plaintiff fails to "plausibly allege any inference of discrimination." (Def. Br. at 16). According to Defendant, the only adverse actions alleged by Plaintiff that are not time barred are: (1) Daniels' false accusation of fraud against Plaintiff on December 18, 2020; (2) Plaintiff's 30-day suspension on August 30, 2021; and (3) Plaintiff's March 10, 2022 termination. (*Id.*). Defendant further argues that the "name calling" by

Daniels is time barred and, regardless, does not support an inference of discrimination. (*Id.*). Plaintiff makes no arguments with respect to the merits of her Title VII discrimination claim. (*See* Pl. Br.). Plaintiff instead makes only a conclusory argument that "because the operative complaint, in this case, has the pleading requirement as outlined above rather than the heightened pleading requirement being argued by [Defendant] that was rejected by the Supreme Court and further explained by the Second Circuit, the motion to dismiss must be denied." (*Id.* at 21). However, for the reasons stated below, Plaintiff fails to plausibly plead a claim for Title VII discrimination.

"For a discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (citation modified). At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motive." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

An adverse employment action is "a 'materially adverse change' in the terms and conditions of employment." *Buon*, 65 F.4th at 79 (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Plaintiff's suspension and termination may constitute adverse employment actions. *See Fraticelli v. Good Samaritan Hosp.*, No. 11-CV-03376, 2012 WL 4069292, at *5 (S.D.N.Y. July 23, 2012). But Daniels "falsely accus[ing] [Plaintiff] of fraud against DSS," (Am. Compl. ¶ 28), does not. *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 784 (S.D.N.Y. 2019) (citing *Spaulding v. N.Y.C. Dep't of Educ.*, No. 12-CV-03041, 2015 WL 12645530, at *38 (E.D.N.Y. Feb. 19, 2015)) ("[F]alse allegations, alone, may not

constitute an adverse employment action."). Plaintiff does not explain how this false allegation resulted in a material adverse change in the terms and conditions of her employment. *Buon*, 65 F.4th at 79.

Plaintiff's Title VII discrimination claim ultimately fails, however, because Plaintiff fails to plausibly plead "at least minimal support for the proposition" that any adverse employment actions taken against Plaintiff were "motivated by discriminatory intent." *Id.* The Court agrees with Defendant that the alleged discriminatory remarks by Daniels, while deplorable if true, are not enough to support an inference that Daniels' statements were a motivating factor in any adverse employment actions taken against Plaintiff. "[S]tray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim" are insufficient to support a claim for employment discrimination, even at the motion to dismiss stage. *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-03416, 2019 WL 3202747, at *5 (S.D.N.Y. July 15, 2019). Furthermore, the alleged remarks were "neither made close in time" to any adverse employment actions "nor in relation to the specific employment decision[s] challenged." *Luka v. Bard College*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). Regardless, Daniels' comments are time barred and, while they may provide background evidence, nowhere in the Amended Complaint does Plaintiff suggest that these comments impacted any timely adverse employment actions taken against Plaintiff. (*See* Am. Compl.). Plaintiff does not even allege that Daniels had any decision-making authority with respect to her suspension or termination. *See Ahmad*, 2019 WL 3202747, at *5 ("Plaintiff alleges no facts indicating that either [Defendant] had decision-making authority with respect to personnel decisions, or were otherwise involved with Plaintiff's termination."). The Amended Complaint is otherwise devoid of facts to suggest that discrimination motivated any timely adverse employment actions taken against Plaintiff.

Accordingly, Plaintiff's Title VII discrimination claim is dismissed.

III.    Title VII Retaliation Claim

Defendant argues that Plaintiff fails to plead that she engaged in protected activity, let alone facts to establish that any alleged retaliatory acts are causally connected to such protected activity. (Def. Br. at 20). Plaintiff makes no argument with respect to the merits of her Title VII retaliation claim. (*See* Pl. Br.). The Court agrees with Defendant that Plaintiff fails to plead a causal connection between any alleged retaliatory acts and any alleged protected activity and, thus, her Title VII retaliation claim fails.

A plaintiff, to survive a motion to dismiss a Title VII retaliation claim, "must plausibly allege that: (1) defendants discriminated or took an adverse employment action against him, (2) because he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (citation modified). "[A]n adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). To plead causation, "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Id.* (citing 42 U.S.C. § 2000e-3(a)). Moreover, "[u]nlike Title VII discrimination claims," to establish causation, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Plaintiff can, however, still show causation through temporal proximity. *See id.* at 91.

The only allegation in the Amended Complaint which is not time barred and could amount to Plaintiff opposing an "unlawful employment practice," is Plaintiff allegedly filing "an internal complaint for racial/ethnic discrimination to DSS EEO Office" on February 4, 2021. (Am. Compl. ¶ 29). Even assuming Plaintiff's internal complaint was protected activity, Plaintiff does not

9

plausibly plead that her complaint was a but-for cause of her suspension and termination. The only support for Plaintiff's internal complaint being a but-for cause of her suspension and subsequent termination is temporal proximity. However, Plaintiff was suspended nearly seven months after she filed an internal complaint and terminated over a year after such complaint. (*See* Am. Compl. ¶¶ 29-30). "[W]here a plaintiff relies on temporal proximity alone, the protected activity and adverse action must occur 'very close' together." *Sealy v. State Univ. of N.Y.*, 834 F. App'x 611, 614 (2d Cir. 2020) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). An adverse employment action as little as "three months after protected activity" could be "too attenuated to give rise to an inference of retaliation." *Id.* (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990)). While seven months "is within the temporal range" that the Second Circuit has "found sufficient to raise an inference of causation," the Second Circuit has also instructed that courts should exercise their "judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)). Here, Plaintiff alleges no facts suggesting that her suspension, seven months after she allegedly engaged in protected activity, and termination, over a year after she engaged in protected activity, were in any way motivated by discriminatory animus. *See Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) ("[W]hen a plaintiff relies on temporal proximity alone to establish causation, courts 'uniformly hold that the temporal proximity must be very close,' which usually means less than three or four months." (quoting *Breeden*, 532 U.S. at 273)). Thus, Plaintiff has failed to allege a causal connection between her protected activity and any adverse employment actions she suffered.

Accordingly, Plaintiff's Title VII retaliation claim is dismissed.

IV.    NYSHRL Claims

Plaintiff's NYSHRL claims must also be dismissed because Plaintiff's Notice of Claim is insufficient for her to bring NYSHRL discrimination and retaliation claims against Defendant.

"State claims brought under state law in federal court are subject to state procedural rules." *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)). New York County Law § 52, applicable here, "incorporates the notice of claim requirements contained in New York General Municipal Law §§ 50-e and 50-i." *Id.* at 198. The New York Court of Appeals has held that "a notice of claim need not be filed for a Human Rights Law claim against a municipality," *Margerum v. City of Buffalo*, 28 N.E.3d 515, 519 (N.Y. 2015), but courts have routinely held that a notice of claim is still a prerequisite to filing a NYSHRL claim against a county. *See, e.g.*, *Russell v. Westchester Cmty. Coll.*, No. 16-CV-01712, 2017 WL 4326545, at *6 (S.D.N.Y. Sept. 27, 2017) ("[A] notice of claim remains a prerequisite to employment discrimination claims against the County."); *Hami v. Chenango County*, No. 21-CV-01224, 2022 WL 1001530, at *3 (N.D.N.Y. Apr. 4, 2022) ("Countless courts have held that County Law § 52 applies the same notice of claim requirement imposed on a limited subset of claims under the General Municipal Law to *all* claims against a county."). "Notice of claim requirements 'are construed strictly by New York state courts.'" *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (quoting *AT&T Co. v. N.Y.C. Dep't of Human Resources*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990)).

Here, while it is undisputed that Plaintiff served a notice of claim on Defendant, Defendant argues that Plaintiff's Notice of Claim was insufficient as it "did not include any reference or facts relating to discrimination or retaliation." (Def. Br. at 21). "Any cause of action or theory of liability not directly or indirectly mentioned in the notice of claim may not be included in a subsequent

11

lawsuit." *Mill St. Partners, LLC v. City of Newburgh*, No. 18-CV-05465, 2019 WL 4274212, at *7 (S.D.N.Y. Sept. 9, 2019) (quoting *Fincher v. County of Westchester*, 979 F. Supp. 2d 989, 1003 (S.D.N.Y. 1997)). Plaintiff proffers two arguments that her notice of claim is sufficient: (1) a notice of claim need not state a cause of action *in haec verba*; and (2) her NYSDHR Complaint, which does mention discrimination and retaliation claims, can substitute as her notice of claim. (Pl. Br. at 22-23). Plaintiff's arguments do not pass muster.

While it is true that a notice of claim need not "state a precise cause of action in haec verba," it still must "set forth 'the nature of the claim . . . .'" *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (first quoting N.Y. Gen. Mun. Law § 50-e; and then quoting *DeLeonibus v. Scognamillo*, 183 A.D.2d 697, 698 (N.Y. App. Div. 1992)). Here, Plaintiff stated in her notice of claim that she planned "to challenge [her] termination from employment" because the "decision to terminate [her] employment was without substantial evidence and . . . the penalty shocks the conscience." (Cosgriff Decl. Ex. C at 2-3). Plaintiff's Notice of Claim does not sufficiently set forth the nature of her NYSHRL claims; it cannot be inferred from Plaintiff's Notice of Claim that she planned to bring NYSHRL discrimination and retaliation claims against Defendant. *See Mill St. Partners*, 2019 WL 4274212, at *8 (dismissing NYSHRL claim where it "was not included in [the] Notice of Claim.").

So too, Plaintiff's argument that her NYSDHR Complaint may substitute for her notice of claim fails. The cases cited by Plaintiff hold that an EEOC charge or SDHR complaint may substitute for a notice of claim pursuant to N.Y. Educ. Law § 3813, not pursuant to N.Y. County Law § 52. *See, e.g.*, *Rettino v. N.Y.C. Dep't of Educ.*, No. 19-CV-05326, 2020 WL 4735299, at *5 (S.D.N.Y. Aug. 14, 2020) (noting that "[a]n EEOC charge can suffice as a substitute for a notice of claim" for N.Y. Educ. Law § 3813). In fact, one case cited by Plaintiff, *Friel v. County of Nassau*,

947 F. Supp. 2d 239, 247 (E.D.N.Y. 2013), expressly rejected the argument advanced by Plaintiff. *See id.* ("An EEOC charge does not satisfy the statutory requirements for filing a notice of claim." (citation modified)); *see also Cody v. County of Nassau*, 577 F. Supp. 2d 623, 648-49 & n.18 (E.D.N.Y. 2008) (finding that, while an EEOC charge may substitute for a notice of claim under N.Y. Educ. Law § 3813, it may not under N.Y. County Law § 52); *Rice v. Wayne County*, No. 09-CV-6391T, 2010 WL 4861556, at *4 (W.D.N.Y. Nov. 30, 2010) (same).

Accordingly, Plaintiff's NYSHRL claims are dismissed because Plaintiff failed to properly include them in her Notice of Claim.

## CONCLUSION

Defendant's motion to dismiss is granted and the Amended Complaint is DISMISSED. Because Plaintiff already amended her complaint, was offered the opportunity to amend her complaint at the pre-motion conference concerning Defendant's motion to dismiss, declined that opportunity, and has not even requested leave to further amend, the Amended Complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 17) and close this case.

**SO ORDERED.**

Dated:   White Plains, New York
         February 24, 2026

PHILIP M. HALPERN
United States District Judge

13